# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01393-SCT

*CITY OF JACKSON, MISSISSIPPI*

*v.*

*REBECCA F. BRISTER, EXECUTRIX OF THE ESTATE OF JAMIE FOWLER BOYLL, DECEASED; AND GUY L. BOYLL, III, AND JILL FOWLER BOYLL, HEIRS AT LAW OF JAMIE FOWLER BOYLL, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/26/2001 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HILTON RAY MILLER |
| ATTORNEYS FOR APPELLEE: | DALE DANKS, JR. |
| | PIETER JOHN TEEUWISSEN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED -02/20/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     On January 13, 2000, Elizabeth Slater (Slater) attempted to evade arrest by City of Jackson police officers after she allegedly attempted to pass a forged check at a bank. A pursuit began and lasted approximately 40-60 seconds. While fleeing from the police, Slater's vehicle crashed into the side of Jamie Fowler Boyll's (Boyll) vehicle at the intersection of Ridgewood Road and Northside Drive in Jackson. The police patrol cars did

not collide with any vehicle. Boyll subsequently died on January 14, 2000, from the injuries suffered in the collision.

¶2.     Rebecca F. Brister (Brister) is the sister of Boyll and executrix of Boyll's estate. Guy L. Boyll, III. and Jill Fowler Boyll are the adult children and heirs-at-law of Boyll. On February 9, 2000, Brister, executrix of the estate of Jamie Fowler Boyll, deceased, and Guy L. Boyll, III, and Jill Fowler Boyll, heirs at law of Jamie Fowler Boyll, deceased (hereinafter collectively named "the Estate"), sent notice to the City of Jackson (City) pursuant to the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002). On March 8, 2000, the Estate also filed a negligence and wrongful death complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against Slater and Brenda K. Dykes (Dykes).[1]

¶3.     On May 11, 2000, an amended complaint was filed adding as defendants the City and four police officers in their individual and official capacities, Corey Watson (Watson); Loris D. Taylor (Taylor); Robbie Huff (Huff); and Milton McFarland (McFarland). On June 20, 2000, the trial court signed an agreed order of dismissal with prejudice for the named defendant, Dykes. On October 9, 2000, the trial court dismissed Officers Watson, Taylor, Huff, and McFarland as to liability in their individual capacities.

¶4.     Following a bench trial, the trial court issued its opinion and order. The trial judge determined that the officers acted with reckless disregard and allocated 50% liability to Slater and 50% liability to the City for the collision between Slater's and Boyll's vehicles. The

---

[1] Dykes was a property owner at the intersection of the accident.

trial court determined that the Estate was entitled to $1,000,000 to be paid jointly and severally among the defendants. However, the trial court noted that an insurance carrier had paid $10,000 on Slater's behalf. The trial court therefore, reduced the judgment against the City to $250,000 or the limits of the liability insurance of the City, whichever was greater.[2] Following this ruling, the City filed a notice of appeal to this Court.

¶5. We find no abuse of discretion by the trial judge whose ruling is supported by substantial, credible and reasonable evidence. Because the learned trial judge applied our controlling case law, we affirm.

## FACTS

¶6. On January 13, 2000, at approximately 11:00 a.m. a chase began between Jackson police officers and Slater. Less than one minute after the pursuit began, Slater's and Boyll's vehicles collided at the intersection of Ridgewood Road and Northside Drive. The patrol car did not collide with any vehicle.

¶7. The incident started when the City received an emergency call from Omni Bank located on Old Canton Road in Jackson. Slater was allegedly attempting to pass a forged check. The bank teller stated that Slater presented to her a check in the amount of four hundred dollars. Linda Williams (Williams), the teller, tried to stall Slater at the bank until the police arrived.

---

[2] On September 13, 2001, a final judgment of dismissal with prejudice was signed by the trial court judge and the parties. The order indicated that all the Estate's claims against Slater were fully settled.

3

¶8.     However, Slater suddenly ran out of the bank. Williams followed Slater to the door. When Williams got to the door, she saw that police officers had arrived at the bank. Williams began to point her finger at Slater and yelled, "That's her, get her."

¶9.     According to Williams, the police car parked beside Slater's vehicle. The vehicle was driven by Officer Watson and also occupied by Officer Taylor.[3] Slater was already half way inside her car when Officer Watson got out of the patrol car. Slater backed out of the parking space and the police officer jumped into his patrol car. Slater's vehicle then squealed out of her space and jumped over the walkway, nearly hitting the patrol car in the process. By this time a second patrol car, occupied by Officers McFarland and Huff, entered the parking lot. The two police cars left the parking lot entrance with their lights on.[4]

¶10.    Slater left the parking lot traveling east onto Old Canton Road. She turned south onto Ridgewood Road. The police followed Slater onto Ridgewood Road and drove through a red light at the intersection of Old Canton and Ridgewood Road. The officers continued driving through a green light at the intersection of Sheffield Drive and Ridgewood Road. Then the officers exited the patrol car at the intersection, and collision site, of Northside Drive and Ridgewood Road. The police chased Slater as she trotted away from the collision and arrested her. The patrol car in which Officers Watson and Taylor were traveling did not strike any vehicle.

---

[3] Officer Taylor was the training officer riding with Officer Watson.

[4] Williams did not know if the sirens were on at the time. Williams's hearing problem prevented her from being able to hear a siren's pitch.

4

¶11. Officer Watson stated that he took the totality of the circumstances into consideration when pursuing Slater. Officer Taylor did not know the amount of the forged check. Officer Taylor did not know the speed limit nor how fast Officer Watson was driving.

¶12. While the two parties present a number of issues for this Court's review, the pivotal issue concerns whether the trial court erred in ruling that the City was liable for the acts of its officers and whether those acts were in reckless disregard of the safety and well being of others. After review of the case, we find that the ruling of the trial court was correct and was supported by substantial, credible, and reasonable evidence. For this reason, the trial court's judgment is affirmed.

## DISCUSSION

### WHETHER THE TRIAL COURT ERRED IN RULING THAT CITY OF JACKSON POLICE OFFICERS ACTED IN RECKLESS DISREGARD AND IMPOSING LIABILITY ON THE CITY.

¶13. "The standard of review for a judgment entered following a bench trial is well settled. 'A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,' and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. *Maldonado v. Kelly*, 768 So. 2d 906, 908 (Miss. 2000) (quoting *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000)). "This Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." *Id*. (citations omitted). The MTCA is the exclusive remedy for filing a lawsuit against governmental entities and its employees. *City of Jackson v. Lipsey*, 2003

WL 69498 (Miss. Jan. 9, 2003); *City of Jackson v. Sutton*, 797 So. 2d 977, 980 (Miss. 2001). *See also Maldonado*, 768 So. 2d at 909.

¶14.   The Mississippi Tort Claims Act, § 11-46-9(1)(c), provides immunity to government entities and employees that act within the course and scope of employment duties.  MTCA § 11-46-9(1)(c) provides in pertinent part as follows:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (c)    Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury...

In addition, MTCA § 11-46-7(2) addresses the Act's coverage when an employee is sued as follows:

> An employee may be joined in an action against a governmental entity in a **representative capacity** if the act or omission complained of is one for which the governmental entity may be liable, but **no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.**  For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Miss. Code Ann. § 11-46-7(2) (emphasis added).

¶15.   This Court has stated that "[a]pparent in the language [of Miss. Code Ann. § 11-46-9] is that those officers who act within the course and scope of their employment, while engaged in the performance of duties relating to police protection, without reckless disregard for the safety and well being of others, will be entitled to immunity." *McGrath v. City of*

6

*Gautier*, 794 So. 2d 983, 985 (Miss. 2001). Indeed, this Court noted that "[t]he purpose of Miss. Code Ann. § 11-46-9 is to 'protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim.'" *Maldonado*, 768 So. 2d at 909 (quoting *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000)). A governmental entity's purchases of liability insurance does not waive any sovereign immunity, nor does it hinder any exclusions or exemptions from waiver. *McGrath*, 794 So. 2d at 987(citing *L.W. v. McComb Separate Mun. Sch. Dist.*, 754 So.2d 1136 (Miss. 1999)). Miss. Code Ann. § 11-46-17(4) "does not limit the exclusions or exemptions in Section 11-46-9." *Maldonado*, 768 So. 2d at 908 (citations omitted).

¶16. The trial judge in the case sub judice determined the following:

> The [c]ourt must balance the competing interests of the community's safety with the expectation that police will apprehend criminals. However, the [c]ourt finds that it is unreasonable to believe that pursuit could be terminated and the effect of termination be realized by the fleeing defendant given the distance from the point where the pursuit began and the point of collision. It is especially unreasonable when the officers testified that the pursuit was terminated but they continued to follow Slater to obtain her license plate number. In other words, the officers continued to engage in a course of conduct in which all the indicia of pursuit was present up to the point of collision. Moreover, pursuit was initiated and maintained despite the fact that the officers did not know whether Slater had committed a felony or a misdemeanor. Accordingly, this [c]ourt finds that the officers acted with reckless disregard.

¶17. The City claims that the acts of the police did not rise to the level of reckless disregard. The police officers were responding to a 911 emergency call with their blue lights and sirens running. In addition, the City argues that none of the officers' police cars collided with Boyll or Slater. Slater alone was involved in the collision with Boyll. Furthermore, the chase lasted less than 60 seconds over a distance of less than a mile.

7

¶18.     Brister argues that the officers' actions did amount to reckless disregard. She claims that, considering the totality of the circumstances and the officers' failure to follow the City's own police department's general order number 600-20, the trial court had overwhelming evidence to find a reckless disregard for the safety and well being of others.

¶19.     Based on our standard of review, the circuit judge's findings are safe on appeal if they are supported by substantial, credible, and reasonable evidence.  Furthermore, in a bench trial such as the case at bar, when the trial judge sits as the finder of fact, he has the sole authority for determining the credibility of witnesses.  *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994); *Bryan v. Holzer*, 589 So. 2d 648, 659 (Miss. 1991); *Bell v. Parker*, 563 So. 2d 594, 597 (Miss. 1990).

¶20.      Dennis Waller, plaintiffs' expert witness, who had previously testified on over 100 occasions on related subject matter, concluded that the officers' conduct here presented an extreme and unreasonable danger to the public.  Waller  based his opinion on the following:

> 1) the chase was contrary to General Order 600-20;
> 2) the officers were still engaged in active pursuit up to the collision;
> 3) pursuit should have been terminated after the officers turned onto Ridgewood Road and realized the suspect would not stop;
> 4) the officers did not attempt to obtain the license plate number which would have eliminated the need for continued pursuit; and
> 5) the officers did not properly balance the public's safety versus immediate apprehension of a check forger.

The circuit judge clearly based his findings on substantial, credible, and reasonable evidence. Applying our appropriate legal standard and recent caselaw, that is all that is necessary.  Had a jury tried this case, it could have reasonably found that all of these circumstances establish more than simple negligence.  The learned trial judge found by looking at the totality of the

8

circumstances that the officers acted with reckless disregard to public safety. That is exactly what our caselaw requires.

¶21.    From the beginning of this tragic incident, the officers showed recklessness and disregard for the safety of others. Here, we have two officers involved: Taylor, a training officer, who certainly knew better than to allow the actions which occurred, and Watson, a new rookie on the police force, who should have known better but, nonetheless, proceeded in spite of his training and police policy. There are further facts that support the premise that the trial judge took the totality of all the circumstances into consideration. For instance, Slater's vehicle was the only one in the parking lot and although the officers could have blocked in her vehicle at the bank parking lot, they did not. They could have easily written down the tag number there instead of attempting such in a hot pursuit chase. Instead, they merely parked their vehicle beside Slater's. General Order 600-20 requires that a pursuit may only be initiated when **the officer knows that a felony has been committed and the officer has probable cause to believe that the individual who committed the felony and the suspect's escape is more dangerous to the community than the risk posed by the pursuit.** The officers failed to ascertain this information in clear violation of the established police department policy. The officers initial actions in parking next to the suspect's vehicle instead of blocking it allowed the suspect to easily avoid arrest at the bank parking lot. It also allowed the suspect to leave the parking lot with the two police cars, sirens and lights sounding and flashing in hot pursuit, all proceeding at a high rate of speed. The lead police car was driven by Watson, a one month rookie on the force, involved in his first hot pursuit and totally unfamiliar with the area. Additionally, the pursuit route was heavily populated.

9

The route took them through residential areas including apartment complexes, single-family housing and condominiums, a park, and even past an elementary school traveling in a 35 miles per hour zone at speeds in excess of 55 miles per hour. The suspect was traveling at times in excess of 70 or 80 miles per hour. At the time of the crash, eyewitness testimony placed the two patrol cars within 20 yards behind the suspect's vehicle. It is clear here that the officers never should have initiated this high speed chase, much less continued it right up to the time of the collision.

¶22. *District of Columbia v. Hawkins*, 782 A.2d 293 (D.C. Ct. App. 2001), is instructive in determining the reckless disregard standard in the case sub judice. That court considered the following to determine whether a police chase constitutes reckless disregard: (1) length of chase; (2) type of neighborhood; (3) characteristics of the streets; (4) the presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; and (6) the seriousness of the offense for which the police are pursuing the vehicle. *Id*. Here, the circuit judge considered many of these factors in making his determination. It is noteworthy that here, as in *Hawkins*, the collision occurred immediately after the vehicles crested a hill and proceeded into a vision-obscured intersection.

¶23. This Court's controlling caselaw on the subject of reckless disregard is clearly established. We have held that reckless disregard is more than ordinary negligence, but less than an intentional act. An officer's conduct although normally shielded by immunity, when coupled with reckless disregard, may allow for a finding of liability. Certainly if this Court found in *Maye v. Pearl River County*, 758 So. 2d 391, 395 (Miss. 1999), that the deputy sheriff's actions amounted to recklessness when he merely backed his automobile into an

10

oncoming vehicle when he could not see "cars coming into the lot," then clearly in the case sub judice recklessness was properly found by the trial judge. In *Maye*, the deputy's claim that he first checked his rear view mirrors prior to backing up his vehicle availed him not with this Court. This Court noted: "This decision does not require a showing of specific intent to harm. The plaintiffs are not required to show Collier intended to hit Goodwin's car when Collier backed out of the parking lot." *Id.* at 395. Thus, the fact here that the officers did not intend that a fatal accident would result as a direct consequence of their high speed chase in violation of Jackson Police Department existing written policy is of no concern. Brister need only show that the officer actions "rose to the level of recklessness." *Id.* at 391. Here, it is sufficient that Brister has shown, and the trial judge so found, that the officers initiated a high speed chase with "conscious indifference" knowing they had not complied with Order 600-20 which was the existing governing policy of the police department at that time. Without adhering to that policy, the officers should have reasonably expected the possibility of adverse consequences including a fatal accident, thus plaintiffs clearly proved reckless disregard to the general public safety. If this Court also found reckless disregard based on the facts of *City of Jackson v. Perry*, 764 So. 2d 373 (Miss. 2000), and the allegations in *Turner v. City of Ruleville*, 735 So. 2d 226 (Miss. 1999), then certainly this judgment should be upheld. Here, overwhelming evidence exists that the officers acted in reckless disregard to the general safety of the public. Proving reckless disregard is all that is required under *Turner, Perry* and *Maye*.

## CONCLUSION

11

¶24.   The trial court did not err by finding the City liable.  The trial court's ruling was clearly supported by substantial, credible, and reasonable factual evidence.  The learned trial judge followed and applied our caselaw.  The judgment of the circuit court is affirmed.

¶25.   **AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., COBB, DIAZ AND CARLSON, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION.  WALLER AND GRAVES, JJ., NOT PARTICIPATING.**

**EASLEY, JUSTICE, DISSENTING:**

¶26.   In my view, the majority errs in affirming the circuit court's determination that the police officers of the City of Jackson acted in reckless disregard for the safety and well being of others by pursuing Slater.  Accordingly, I disagree with the holding that the City is liable for the acts of the officers.

¶27.   From the onset, I stress that the actions of the suspect, Slater, were the proximate cause of the fatal collision resulting in Boyll's death.  Additionally, this case involves an alleged attempted forgery, which is a felony, and a pursuit which lasted less than sixty (60) seconds and covered a distance of less than one mile. (.7).

I.

¶28.   Miss. Code Ann. §  97-21-29 (Rev. 2000) states:

> If any person shall, with intent to injure or defraud, make any instrument in his own name, intended to create, increase, discharge, defeat, or diminish any pecuniary obligation, right or interest, or to transfer or affect any property whatever, and shall utter and pass it under the pretense that it is the act of another who bears the same name, he shall be guilty of forgery.

¶29.   Miss. Code Ann. § 97-21-33 (Rev. 2000) designates the penalty for a forgery:

12

> Persons convicted of forgery shall be punished by imprisonment in the penitentiary for a term of not less than two (2) years nor more than fifteen (15) years, provided, however, that when the amount of value involved is less than one hundred dollars ($100.00) in lieu of the punishment above provided for, the person convicted may be punished by imprisonment in the county jail for a term of not more than twelve (12) months, within the discretion of the court.

¶30. Pursuant to Miss Code Ann. § 1-3-11 (Rev. 1998), "the term 'felony,' when used in any statute, shall mean any violation of law punished with death or confinement in the penitentiary."

¶31. The bank teller testified that Slater allegedly attempted to pass a forged check worth $400. Pursuant to the above statute and the penalty associated with forgery, the crime is a felony. The dollar amount of an attempted forged check is irrelevant.

II.

¶32. Miss. Code Ann. § 11-4-9(1)(c) (Rev. 2002) provides immunity for governmental entities and employees acting within the course and scope of their employment duties. However, the statute does not specifically define the term "reckless disregard," but this Court has held the following:

> Since "reckless disregard" is not defined by statute, Maldonado directs this Court's attention to the various sources we have used in the past to define recklessness. This Court examined this issue in *Turner v. City of Ruleville*, and the Court looked to *Black's Law Dictionary* for guidance as to the proper definition:
>
>> 'Reckless disregard of the rights of others' is defined [a]s used in automobile guest law, means the voluntary doing by motorist of an improper or wrongful act, or with knowledge of existing conditions, the voluntary refraining from doing a proper or prudent act when such an act or failure to act evinces an entire abandonment of any care, and heedless indifference to results which may follow and the reckless taking of chance of accident happening without intent that any occur....

13

735 So.2d 226, 228-29 (Miss.1999) (quoting *Black's Law Dictionary* 1270 (6th ed. 1991)). Additionally, this issue was also revisited in *Maye v. Pearl River County*, where we cited a definition of recklessness given by the Fifth Circuit:

> The terms 'willful,' 'wanton,' and 'reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.

758 So.2d 391, 394 (Miss.1999)(quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 n. 3 (5 th Cir.1991) (emphasis in original)). Additionally, this Court has held that 'wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Turner*, 735 So.2d at 229 (citing *Beta Beta Chapter v. May*, 611 So.2d 889, 895 (Miss.1992)) (quoting *Covington v. Carley*, 197 Miss. 535, 541-42, 19 So.2d 817, 818 (1944)).

*Maldonado v. Kelly*, 768 So.2d 906, 909-10 (Miss. 2000).

¶33. This Court has ruled on quite a few occasions in cases involving police actions within the context of the MTCA. In *Maldonado*, an officer was driving a patrol car to a service station for maintenance when he collided with a vehicle driven by Kelly. *Maldonado*, 768 So.2d at 908. At the time of the accident, a water tower partially blocked Maldonado's view and he did not see Kelly's vehicle until right before the collision. *Id*. This Court held that while "Maldonado may have been negligent, his actions do not rise to the level of reckless

14

disregard." *Id*. at 911. Consequently, Maldonado and Hinds County were immune pursuant to the MTCA, § 11-46-9(1)(c). *Id*.

¶34. This Court has further held that immunity pursuant to MTCA applied to the City of Gautier and a police officer in a negligence suit. Involving the brake failure of the officer's patrol car which caused a collision with McGrath. *McGrath v. City of Gautier*, 794 So.2d 983 (Miss. 2001). The Court based its holding, in part, upon the theory that municipalities are exempt from an injury caused by a police vehicle since the maintenance of a police department is a governmental function. *Id*. at 987.

¶35. In contrast, this Court has found, that a police officer's actions amounted to reckless disregard. *City of Jackson v. Perry*, 764 So.2d 373, 375 (Miss. 2000). There, the police officer was on his way to dinner with fellow officers when he was involved in an accident. *Id*. At the time of the collision, the officer was speeding, however, he was not on an emergency call and was not using either the siren or blue lights. *Id*. This Court held that the officer's actions did show a reckless disregard for the safety and well-being of others and affirmed the lower court's ruling. *Id.* at 378. Likewise in *Maye v. Pearl River County*, 758 So.2d 391, 395 (Miss. 1999), this Court held that a deputy sheriff acted with reckless disregard for the safety and well-being of others when he backed up an incline knowing that he could not see oncoming traffic. *Id*. Maye, the other driver, blew her horn, yet the officer did not respond until his patrol car struck her vehicle. *Id*. at 394.

¶36. In *Turner v. City of Ruleville*, 735 So.2d 226, 230 (Miss. 1999) the trial court's dismissal of a complaint for failure to state a claim was reversed and remanded by this Court. A passenger, Turner, was injured in a collision with a drunk driver. *Id*. at 227. Turner sued

15

the drunk driver and the City of Ruleville when she alleged that prior to the accident an officer stopped the drunk driver and then allowed the visibly intoxicated driver to continue driving. *Id*. The Court concluded that "[b]y this alleged act, the officer allegedly showed a reckless or wanton and willful disregard for the safety of other drivers on the road, including Turner." *Id*. at 230. *See also* **Bridges v. Pearl River Valley Water Supply Dist.**, 793 So.2d 584 (Miss. 2001) (case reversed and remanded in part due to trial court's misreading of Miss. Code Ann. § 11-46-5. The statute states an employee is not acting within the course and scope of employment when the conduct constitutes fraud, malice, libel, slander, defamation or any criminal offense.).

III.

¶37.    First and foremost, Slater's actions proximately caused the collision with Boyll.  This was a tragic accident.  However, there was no testimony that Slater would have avoided the collision if the police had not pursed her. The police in this case did not collide with Boyll's vehicle. Further, Officers Watson and Taylor responded to a call for an alleged forgery in progress at the Omni Bank. An attempted forgery is a felony.  The officers received a dispatch and responded to the call since they were near the bank at the time of the call.

¶38.    The bank teller testified that Slater allegedly attempted to pass a forged check worth $400.  The teller tried to stall Slater until the police arrived at the bank.  Slater had her back to the bank entrance; thus, she would not have known if the police were arriving at the bank. However, Slater suddenly turned around and exited the bank.  She began to flee the scene at the moment she turned from the counter to leave the bank.  Slater left the bank and was already on her way to a vehicle when the officers arrived at the bank and pulled into a

16

parking space. The bank employee was pointing at Slater. Officer Watson began to exit his vehicle and told her to stop, but Slater ignored him and continued to get into the vehicle.

¶39.    The majority cites the officer's failure to block Slater's vehicle and write down her tag number. The police did not know that the vehicle in the parking lot belonged to Slater. In fact, the parking lot was blocked. A second police car was entering the parking lot as Slater was leaving, and the patrol car blocked the parking lot entrance. The incident occurred so quickly that the officers had only pulled into the space when Slater jumped into the vehicle and sped away making writing down the license plate number difficult at best. Testimony revealed that the vehicle did not belong to Slater. Consequently, the tag number would not have necessarily provided the police with the identity of the suspect, Slater.

¶40.    As Slater pulled out of her parking space, she nearly collided with Officer Watson's vehicle. About this same time, the other patrol car began to enter the parking lot. Slater then drove her car over the sidewalk to flee from the area at an excessive speed. The majority appears to suggest that the police had lights flashing, sirens blazing, and cars racing after Slater in hot pursuit. The fact is, the police did not have any sirens or lights on at the time that they pulled into the bank parking lot. Officer Taylor only turned on the lights and sirens as the police left the parking lot of the bank. Therefore, Slater was fleeing in the vehicle before any police lights or sirens were in use. The officers did not initiate the pursuit until after Slater was already headed east on to Old Canton Road. In fact, Officer Watson, in the lead parol vehicle, stopped momentarily to calm himself on Old Canton prior to following Slater on Ridgewood Road. Slater never stopped fleeing. She finally attempted to run a red light and unfortunately collided with Boyll's vehicle. There was no indication that Slater

17

would not have fled and sped away at a high rate of speed even if the police had not followed her.

¶41.   A pre-MTCA case, *Mosby v. Moore*, 716 So.2d 551, 557 (Miss. 1998), is helpful because it provides guidance on the issue of police driving.  This Court held that "[t]he act of driving for police officers is a major part of their jobs. It is something that they must do in order to fulfill their duties. They do not drive simply to get from one place to another, instead they patrol. This type of driving does involve a discretionary, decision-making process..." *Id*.  Pursuit of criminals or suspected criminals is clearly in the course and scope of police protection, this would include pursuit in the patrol car.

¶42.   The officers' actions raise the issue of whether the acts were performed in reckless disregard to the safety of others.  The officers were responding to an alleged crime in progress, check forgery.  Officer Watson testified that he told Slater to stop, however, she continued to get into her car.  Slater did not exit through the parking lot; rather she jumped over the sidewalk in the vehicle she was driving.

¶43.   Officer Watson testified that he looked at the totality of the circumstances and considered: Slater's actions, her refusal to stop, her almost hitting another vehicle, and her exit at a high rate of speed.  Officer Watson also considered that the traffic was light to medium and that he saw no pedestrians, nor pedestrians in a nearby park, and no school buses or children in the school zone. Officer Watson also considered the weather conditions.

The majority states that the route was "heavily populated." This is an unfair statement because, although the route was in an area of high population, the officers testified that on

18

this day the traffic was light and there were no children, no school buses and no pedestrians nearby.

¶44. I believe that the police actions in this case did not amount to reckless disregard to the safety and well being of others. The tragedy of Boyll's death is not to be diminished nor does it go unnoticed. However, Slater's actions caused the collision and death of Boyll. Slater allegedly attempted to pass a forged check. Slater fled from the bank and jumped the sidewalk. Slater began speeding away from the scene. Slater struck Boyll's vehicle.

¶45. The time and distance between Slater fleeing the bank and crashing into Boyll's vehicle are too inconsequential. The collision occurred in less than 60 seconds, with some accounts being as little as 40-45 seconds, and less than one mile from the bank. The police officers were not a part of the fatal collision. Slater struck Boyll's vehicle only and was the proximate cause of the collision and Boyll's subsequent death. There is no evidence to suggest that had the police not followed Slater the collision would have been avoided. Thus, it is unreasonable to assume that had the police not followed Slater, she would not have continued her flight. Slater allegedly had just attempted to pass a forged check, a felony; she ran from the bank; she refused to stop at police request; and she was bound and determined to flee from the scene regardless of the police presence.

¶46. The testimony also showed that the officers considered many factors and in the totality of the circumstances chose to pursue Slater. The job of a police officer is to enforce the laws and apprehend suspects. In order to apprehend a suspect, police personnel must reasonably be able to pursue suspects. If this were not the case, then criminals need only to jump in their vehicles and ride away to freedom. The majority's opinion today informs

19

suspects that all they need is a fast car to ensure freedom. Even for more simple cases of a traffic violation, be it speeding, an out-of-date license tag, or other infraction, the suspect need only gun the engine, step on the gas, breathe a sigh of relief and drive off to liberty.

¶47.    This Court found reckless disregard in *Perry*, where the police officer sped on his way to dinner and was not on an emergency call nor was he using either the siren or blue lights. *Perry*, 764 So.2d at 375. In contrast, the officers in this case were performing their duty of apprehending a suspect for an alleged crime and used both lights and sirens. This case is also distinguishable because the officers did not collide with Boyll. The suspect, Slater, was driving the only vehicle that collided with Boyll that fateful day. Furthermore, the time and distance between Slater's flight and the collision was too minimal to impart liability on the City.

¶48.    This was a tragic accident that claimed the life of Boyll, a mother and hard-working individual. The unfortunate fact, however, is that Slater caused the fatal collision. This accident was inevitable, and there was no evidence that the police caused the accident. The reality is that in our "sue happy" society the City and its officers would have been sued in this case in any event. It makes no difference whether the officers acted in the manner the majority deems proper, which would be to do nothing and let the suspect flee the scene, or whether they pursued someone allegedly attempting forgery. The actions of the officers would be questioned in either scenario, and a lawsuit would be filed in our court system.

¶49.    Under the specific facts of the case sub judice, I believe that the trial court erred in ruling the City liable for the actions of the officers. The trial court erred by finding the City liable. The trial court's ruling was not supported by substantial, credible, and reasonable

20

evidence. Accordingly, I disagree with the majority's ruling today and would reverse and render judgment in favor of the City. Therefore, I respectfully dissent.