LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. The conflict in this case centers around a covenant not to compete entered into by the parties when John and Jamie Mickalowski sold their retail flooring business, American Flooring, Inc., to Jim Chrestman.
¶2. The Mickalowskis owned and operated American Flooring and Floors 4 Less (both operated as American Flooring), a retail ceramic tile store, in Lee County, Mississippi, near the town of Saltillo. On July 21, 2000, the Mickalowskis entered into a contract with Chrestman, whereby Chrestman agreed to purchase all of the assets of the flooring business. Chrest-man paid $829,227 for the business and an additional $90,000 for the covenant not to compete. The non-compete agreement prohibited the Mickalowskis from engaging in retail sales of ceramic tile and other flooring. However, the Mickalowskis reserved the right to engage in the wholesale distribution of tile “from time to time.” The terms of the agreement will be discussed in more detail as applicable.
¶ 3. Chrestman became aware of several violations of the agreement and filed a complaint on October 30, 2001, in the Circuit Court of Lee County seeking in-junctive relief, compensatory damages, punitive damages, attorney’s fees and expenses, and any other relief available at law or in equity. During the bench trial, the trial court heard testimony regarding alleged retail sales, sales to other retailers in Lee County without proper notice, and sales to retailers outside Lee County but within the restricted area without proper notice. The trial court also heard testimony regarding two retail ceramic tile stores in which John Mickalowski allegedly had some involvement. The trial court entered an opinion on August 25, 2005, finding that the Mickalowskis willfully violated the terms of the non-compete agreement by selling tile to retail customers and by selling tile wholesale both inside and outside Lee County without proper notification to Chrestman. In the final judgment dated October 21, 2005, the trial court awarded Chrestman $90,000 in compensatory damages, $25,000 in punitive damages, and $19,095.06 in attorney’s fees.
¶4. The Mickalowskis now appeal the circuit court’s decision to this Court asserting the following issues: (1) the trial court erred in finding that they violated Section 6.1, the covenant not to compete; (2) the trial court erred as a matter of law in finding that they violated 6.1.a.a. of the agreement by failing to give American Flooring notice of the proposed sale of wholesale tile to Tupelo Lumber; (3) the trial court erred as a matter of law in finding that they breached 6.1.a.b. of the agreement in that notices of wholesale sales outside of Lee County were required only if the purchaser establishes a retail presence outside of Lee County; (4) the trial court erred in assessing damages at $90,000; (5) the trial court erred in assessing punitive damages; and (6) the trial court erred in awarding attorney’s fees. For judicial economy, Issue I will be combined with Issues II and III. Issues IV, V, and VI will also be combined as each addresses the issue of damages.
¶ 5. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 6. A trial judge’s findings of fact following a bench trial will not be disturbed on appeal as long as they are supported by substantial, credible and reasonable evidence. City of Jackson v. Brister, 838 So.2d 274, 277-78(¶ 13) (Miss.2003). Issues of law, however, are reviewed under a de novo standard. Id.
*706 DISCUSSION
I. DID THE TRIAL COURT ERR AS A MATTER OF LAW IN FINDING THAT THE MICKALOWSKIS VIOLATED 6.1.a.a. OF THE AGREEMENT BY FAILING TO GIVE AMERICAN FLOORING NOTICE OF THE PROPOSED SALE OF WHOLESALE TILE TO TUPELO LUMBER

The covenant not to compete

■ ¶ 7. The covenant not to compete set forth the following restrictions on the Miekalowskis’ business .activities. Under Section 6.1 of the agreement, the Micka-lowskis agreed not to compete, directly or indirectly, with Chrestman in the ceramic tile and flooring businesses for five years after the sale of American Flooring. This restriction was limited to “a one hundred (100) mile radius from the premises where the Business is located.” Notwithstanding the one hundred mile restriction, Section 6.1.a. of the agreement stated that the Miekalowskis would be permitted to engage “in the wholesale distribution, from time to time, of ceramic tile (the ‘Wholesale Tile’) within a fifty (50) mile radius from the premises where the Business is located (the Wholesale Territory’),” subject to the following conditions and restrictions:
a. Purchaser shall have the exclusive right of first refusal, in its sole discretion, to carry for retail sale and to purchase from Seller any and all lines of the Wholesale Tile in Lee County, Mississippi. In furtherance of this right of first refusal, Seller agrees as follows:
i.Before selling any Wholesale Tile to any person or entity inside Lee County, Mississippi, Seller shall first offer such Wholesale Tile to Purchaser in writing.
ii. Within 30 days of its receipt of the written offer provided for in the preceding paragraph, Purchaser shall notify Seller whether it intends to exercise its right of first refusal to carry and to purchase from Seller such lines of Wholesale Tile in Lee County, Mississippi.
iii. If and only to the extent that Purchaser elects not to exercise its right of first refusal as to said Wholesale Tile, Seller shall be free to sell same to other purchasers in Lee County, Mississippi; provided, however, that if Purchaser later de- . cides that it wants to carry and purchase any such lines of Wholesale Tile in Lee County, Mississippi, Seller agrees to accept no further orders for said Wholesale Tile from the existing purchaser(s) thereof in said county.

Wholesale activities within Lee County

¶ 8. Section 6.1.a.a. of the covenant not to compete allowed the Miekalowskis to engage in wholesale distribution “from time to time” with the condition that American Flooring was given the right of first refusal on the sales in Lee County. With regard to sales in Lee County, the trial court concluded that the Miekalowskis violated the agreement with regard to their business relationship with Tupelo Lumber. Specifically, the trial court stated that “the Defendants violated the terms and conditions of Section 6.1.a. dealing with proposed wholesale sales within Lee County when the Defendants failed to notify in writing the Plaintiff regarding the proposed sale to Tupelo Lumber,” and a sale to Tupelo Lumber would be in direct competition with Chrestman’s store.
¶ 9. The Miekalowskis gave notice of the first proposed sale within Lee County in accordance with Section 6.1.a. of the agree *707 ment, and Chrestman chose not to exercise his right of first refusal on this particular sale. However, when the Mickalowskis offered tile to Tupelo Lumber, they did not give American Flooring notice and the opportunity to exercise its right of first refusal as required in the contract. John Mickalowski argues that, while no specific notice was given, he would send an updated price list periodically which constituted notice. Jamie Mickalowski acknowledged that Tupelo Lumber did not sell ceramic tile and would be in direct competition with American Flooring if they were to do so. We are not persuaded by John Micka-lowski’s assertion that mailing updated price lists served as notices for Chrestman to exercise his right of first refusal. This is especially true for Section (b) which required the notice to include “a description and location of the proposed purchaser, and a description of the Wholesale Tile which Seller proposes to sell to said prospective purchaser.”

Retail sales

¶ 10. The covenant not to compete expressly prevented the Mickalowskis from participating in any retail sales within 100 miles of the physical location of Chrestman’s business for a period of five years, beginning on July 21, 2000. Two or three months after the Mickalowskis sold American Flooring to Chrestman, John Mickalowski constructed a large warehouse and opened Old World The, a wholesale ceramic tile store, in Booneville, Mississippi, which was outside of Lee County but within approximately fifteen miles of the current location of American Flooring. Chrestman testified that he began hearing about retail cash sales to customers by Old World Tile and was concerned about the size of Mickalowski’s new business. Chrestman believed that John Mickalowski was violating the terms of the non-compete agreement, which only allowed him to engage in wholesale business in the restricted area “from time to time.” According to John’s testimony, Old World Tile was the only tile distributor in northeast Mississippi and the largest source of wholesale tile in northeast Mississippi. It grossed approximately $800,000 in 2004. Chrest-man’s disapproval is reflected in the business relationship between Chrestman and Mickalowski. Between July and September 2001, Chrestman purchased $68,496.21 in tile from Old World Tile. Between September 2001 and July 2005, Chrestman purchased only $5,034.25 in tile from Old World Tile. After hearing evidence that American Flooring stopped purchasing wholesale tile from Old World Tile, it was apparent to the trial judge that “Mr. Mick-alowski perceived that it was a ‘condition precedent’ that American Flooring sell Old World Tile, otherwise, the Mickalowskis perceived they were under no obligations to honor the terms of the Purchase and Sale Agreement.” Nothing of this nature appears in the covenant not to compete and the Mickalowskis should not be allowed to use this as an excuse for violating the covenant not to compete.
¶ 11. The trial court also heard testimony regarding two retail ceramic tile stores in which John Mickalowski allegedly had some involvement. In June of 2002, after Chrestman moved American Flooring to another location, Tony Kendrick opened a retail ceramic tile store, The Tile Depot, in the half of Mickalowski’s building that originally housed Chrestman’s store. Kendrick, a former employee of the Micka-lowskis and Chrestman, testified that John Mickalowski approached him about opening a retail store and proposed that he and Kendrick be “silent partners.” No documents exist outlining the terms of Kendrick’s partnership with Mickalowski. However, Kendrick testified that no written agreement was made because John Mickalowski wanted the arrangement to *708 be verbal because he could not personally sell to anyone not having a tax identification number due to the non-compete clause. Mickalowski denied any such relationship. Kendrick testified that Micka-lowski provided everything necessary for the operation of the store, including personally moving computers, fixtures, displays, and office equipment into the building. Kendrick further testified that when the store was not successful, Mickalowski changed the terms of the deal so that Kendrick became nothing more than an employee.
¶ 12. The evidence was uncontradicted that Chrestman personally observed John Mickalowski coming to and from The Tile Depot. Kendrick testified that he personally witnessed the Mickalowskis sell tile to the public. He testified that customers contacted him to inquire about installing tile purchased from Old World Tile. He also testified that the Mickalowskis sold tile to him without him having a sales tax number, and he testified that the Micka-lowskis had given him samples to go sell tile to others. Kendrick further testified that he knew about the non-compete agreement because John Mickalowski warned him that Chrestman did not need to find out about the retail sales because the sales violated the non-compete clause. From this testimony, the trial judge determined that the Mickalowskis were aiding and assisting in the operation of The Tile Depot in violation of the non-compete agreement.
1113. John Mickalowski argues that Kendrick’s testimony is unreliable because at some point Kendrick was unable to continue paying for the tile and Mickalowski repossessed the remaining unsold tile. Kendrick was ultimately arrested and John Mickalowski argues that Kendrick blames him for the failure of his business and for his arrest for failure to deliver tile which Kendrick sold to a local governmental agency. The charges against Kendrick were later dismissed. Mickalowski argues that the agreement did not preclude him from leasing the building for fair market value regardless of the product sold. However, Chrestman argues that, at the least, the deal amounted to aiding and assisting a competitor.
¶ 14. Keith Phillips, an employee of the Mickalowskis, testified that he had personally read the non-compete agreement during his employment. He testified to witnessing people come into Old World Tile, look at samples, buy the tile, and leave with it in hand. He also testified that John Mickalowski told him that if Chrest-man would not buy tile from Old World Tile then he would sell it to Chrestman’s prospective customers. Phillips further testified that John kept an invoice book on his desk in Earl Owen’s trade name to make it appear that tile was being sold by Earl Owens and not Old World Tile. Ed Neely, a construction inspector and appraiser, testified that John told him that he could not sell him tile since he was “wholesale only.” However, Neely testified that he bought tile through Earl Owens even though he selected tile at Old World Tile using Old World Tile’s samples and was never shown any samples by Earl Owens. Earl Owens testified for the defense that to his knowledge Old World Tile did not sell to retail customers.
¶ 15. Another instance of a retail store in which John Mickalowski allegedly had some involvement was with his brother, Jerry Mickalowski. After Kendrick’s business failed, John rented the other half of the building to his brother who opened a retail tile store. Mickalowski testified that he charged his brother fair market value for the rent on the building and did not assist his brother in any way in running the store. Ultimately, the store was *709 unsuccessful. Chrestman argues that allowing a direct competitor to establish a business approximately one mile from his location provided more evidence that the Mickalowskis intended to violate the covenant not to compete.
¶ 16. Given the evidence, we find that the trial judge did not err in finding a violation of Section 6.1.a. of the agreement regarding sales within Lee County, and her decision is affirmed as it was based on substantial evidence. Further, substantial evidence exists to support the trial court’s conclusion that the Mickalowskis made retail sales through Old World Tile, and the evidence shows that their wholesale distribution exceeded the “from time to time” limitation.
II. DID THE TRIAL COURT ERR IN FINDING THAT THE MICKA-LOWSKIS BREACHED 6.1.a.b. OF THE AGREEMENT IN THAT NOTICES OF WHOLESALE SALES OUTSIDE OF LEE COUNTY WERE REQUIRED ONLY IF THE PURCHASER ESTABLISHED A RETAIL PRESENCE OUTSIDE OF LEE COUNTY
¶ 17. Section 6.1.a.b. of the agreement set out the following restrictions 'with regard to wholesale activities outside Lee County but within a fifty mile radius from the premises where the business is located (the “Wholesale Territory”):
b. Purchaser shall have the exclusive right of first refusal, in its sole discretion, to carry for retail sale and to purchase from Seller any and all lines of the Wholesale Tile in any area outside of Lee County, Mississippi but within the remainder of the Wholesale Territory, in which Purchaser establishes a retail presence. In further [sic] of this right of first refusal, Seller agrees as follows:
i. Before selling the Wholesale Tile to any person or entity outside of Lee County, Mississippi, but within the geographic limits of the Wholesale Territory, Seller shall give Purchaser advance written notice of its intention to sell said Wholesale Tile, which notice shall include a description and location of the proposed purchaser, and a description of the Wholesale Tile which Seller proposes to sell to. said prospective purchaser.
ii. Within 30 days of its receipt of the written notice provided for in the preceding paragraph, Purchaser shall notify Seller whether it intends to exercise its right of first refusal to carry for retail sale and to purchase from Seller said lines of Wholesale Tile in said area.
iii. If and only to the extent that Purchaser elects not to exercise its right of first refusal as to said Wholesale Tile in said geographic area, Seller shall be free to sell same to said prospective purchaser; provided, however that if Purchaser later decides that it wants to carry and purchase said Wholesale Tile in said geographic area, Seller agrees to accept no further orders fro [sic] said Wholesale Tile from the existing purchaser(s) thereof in said area.
¶ 18. With respect to Section 6.1.a.b.— sales outside of Lee County — the proof is uncontradicted that no notices were given to Chrestman. Chrestman testified that American Flooring does business in all of northeast Mississippi and advertises throughout northeast Mississippi. We find that the trial court correctly stated that “the language in (b) establishes that American Flooring already had an established retail presence outside of Lee County but within the 50 mile radius or else there *710 would have been no reason to include (b) in the Agreement.” (emphasis added). At the time of the agreement, Chrestman’s store was located in Lee County five miles from the Prentiss County line. It would not be reasonable to require him to open another location five miles away to trigger Section 6.1.a.b. American Flooring was already doing business in Prentiss County, and Chrestman testified that he had established a retail business in northeast Mississippi that included Tippah County, Corinth, Monroe County, and the general northeast Mississippi area. According to Chrestman, he advertised in all of these areas and more than fifty percent of his business came from outside Lee County.
¶ 19. John Mickalowski testified that he sold wholesale tile to the following entities: Perry’s at Booneville, Earl Owens, South-land, Collier-Windham, Booneville Flea Market, Amanda Oust, Leslie’s Floors, and Wren’s Carpets. Upon questioning, he stated that all these businesses were within a fifty mile radius of American Flooring and all of the businesses were located outside of Lee County. John admitted that he did not give notice on these sales pursuant to the agreement. He also admitted that the sales were in direct competition with American Flooring and agreed that had proper notice been given, Chrestman would have had an opportunity to block the sales to these entities had he chosen to exercise his right of first refusal.
¶ 20. The Mickalowskis should have been put on notice from the terms in the agreement that Chrestman already had a retail presence in Northeast Mississippi. If this were not true then Section (b) would have been unnecessary. Further, Section 6.a.b.i. specifically states, “Before selling the Wholesale Tile to any person or entity outside of Lee County, Mississippi, but within the geographic limits of the Wholesale Territory, Seller shall give Purchaser advance written notice of its intention to sell said Wholesale Tile.” (emphasis added). Since Chrestman had a retail presence within the restricted area, the Mickalowskis should have known that they must give notice before selling to any person or entity in the area.
¶ 21. We find that the decision of the trial court was based on substantial evidence and should be affirmed. This issue is without merit.
III. DID THE TRIAL COURT ERR IN ITS AWARD OF COMPENSATORY DAMAGES, PUNITIVE DAMAGES, AND ATTORNEY’S FEES
¶ 22. The Mickalowskis argue that damages are not appropriate since they did not violate the covenant not to compete. In the alternative, they argue that the amount of damages awarded was excessive.
¶ 28. Chrestman paid $90,000 for the non-compete clause, and the parties agreed in the purchase agreement that this was the value of the covenant not to compete. The trial court’s opinion stated that the award of $90,000 was meant to reimburse Chrestman for what he paid for the non-compete clause since the Micka-lowskis wholly failed to comply with its terms; thus, putting Chrestman in as good a position as he would have been in but for the breach. The trial judge based the award on the Mickalowskis’s flagrant violations of the covenant not to compete. While it is apparent that Chrestman received little value for the $90,000 he paid for the covenant, the award not only reflects the price paid but also the ongoing and irreparable harm caused by the violations.
¶ 24. On the issue of punitive damages, the trial court stated in its opinion:
*711 From a totality of the evidences, it is evident that the Defendants executed the agreement and deliberately engaged in a course of misconduct. The evidence establishes that their wholesale activities were clearly larger in scope than the restricted language of “from time to time.” They engaged in the above cited sales in total disregard of the contract language requiring notice to the Plaintiff. At the end of the day, this Court is persuaded that the Mickalowskis were upset that the Plaintiff was not purchasing their tile product and deliberately elected to totally disregard the covenant not-to-compete even though the Defendants had been paid $90,000 to refrain from competing against American Flooring.
The award of punitive damages and the amount is within the discretion of the trier of fact. Sudeen v. Castleberry, 794 So.2d 237, 249(¶ 34) (Miss.Ct.App.2001). At the same time, punitive damages are appropriate “only in extreme cases,” and should be awarded only with “caution and within narrow limits.” Id. (citing Bryant v. Alpha Entm’t Corp., 508 So.2d 1094, 1098 (Miss.1987)). The trial judge demonstrated that this was an extreme case warranting punitive damages in her statement that after executing the agreement the Mickalowskis “deliberately engaged in a course of misconduct” and “elected to totally disregard the covenant not-to-compete.” Based on the evidence, the decision of the trial court regarding damages should be affirmed.
¶25. After reviewing the trial court’s seventeen page opinion, we find it to be based on the evidence and find that the trial judge made sufficient findings of fact to support her ruling. We find that the trial judge’s opinion was based on substantial, credible and reasonable evidence and thus cannot now be disturbed on appeal.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
MYERS, P.J., GRIFFIS, ROBERTS AND CARLTON, JJ., CONCUR. BARNES J., CONCURS IN RESULT ONLY. KING, C.J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND ISHEE, JJ. IRVING, J., NOT PARTICIPATING.