WESTBROOKS, J., DISSENTING:
 

 ¶ 52. I am of the opinion that there is substantial, credible, and reasonable evidence to support the trial court's finding of reckless disregard. Therefore, I respectfully dissent.
 

 DISCUSSION
 

 ¶ 53. MDWFP Officers Michael Thrash and Barry Delcambre
 
 [12]
 
 witnessed a boat traveling on the Tchoutacabouffa River speeding and operating in a reckless and uncontrollable manner. There was testimony presented that the officers saw Bernius being "propped up" (back to back) by a passenger while Bernius was operating the boat. The officers stopped Bernius in Bend 2, which is a part of the river the officers contended is a dangerous area. The officers did not inquire whether Bernius was able to operate his boat at this time. Instead, Officer Thrash instructed Bernius to move to a straightaway down the river. Officer Delcambre proceeded down the river ahead of Officer Thrash, and Bernuis was ordered to follow Officer Thrash. According to Officer Delcambre's testimony, they were going to move about one hundred fifty yards down the river to further talk to Bernius. At this time, both officers were in front of Bernius.
 

 ¶ 54. Bernius followed the officers out of Bend 2, then turned his boat around and recklessly sped off in the opposite direction. John Joachim, a witness of the accident, was traveling down the river and observed Bernius recklessly speeding on the wrong side of the river, traveling away from the officers. Joachim testified he had to maneuver his boat to avoid a collision with Bernius.
 

 ¶ 55. A few moments later, Bernius crashed into a boat operated by Christopher Webb. It is unclear how far away Bernius traveled away from the officers; however, the officers did not witness the crash. Christopher was killed in the crash,
 and Shane Webb and Kailer Harper, passengers on Christopher's boat, were injured. Bernius and a passenger on Bernius's boat, Dexter Bouie, were thrown into the water. Neither Bernius nor Bouie was seriously injured. The Webbs
 
 [13]
 
 filed suit against the MDWFP under the MTCA. The Webbs asserted the officers acted with reckless disregard for the safety of others.
 

 ¶ 56. The trial court held that the officers' conduct in directing Bernius out of the bend was in reckless disregard for the safety of the public. I agree. The majority opines that the officers' deviation from the MDWFP SOPs (standard operating procedures) did not amount to the deliberate disregard for the safety of others. We do not believe that deviating from standard procedure alone is dispositive of the issue of reckless disregard. However, here it is one of the factors the trial court considered alongside the totality of the circumstances to render a finding of reckless disregard. The trial court determined that "the parties have cited numerous cases from the appellate courts of Mississippi." "A review of those cases clearly reveals that, while there are guidelines for applying the reckless disregard standard, the ultimate decision concerning recklessness is very much fact-driven, hence the totality of the circumstances requirement." I agree with the trial court's findings.
 

 ¶ 57. "Based on our standard of review, the circuit judge's findings are safe on appeal if they are supported by substantial, credible, and reasonable evidence."
 
 City of Jackson v. Brister
 
 ,
 
 838 So.2d 274
 
 , 278-79 (¶ 19) (Miss. 2003). "Furthermore, in a bench trial such as the case at bar, when the trial judge sits as the finder of fact, he has the sole authority for determining the credibility of witnesses."
 

 Id.
 

 (citations omitted). I find the evidence supports a finding that the officers acted in reckless disregard for public safety, because they did not conduct the stop or control Bernius properly. In
 
 Brister
 
 , the court upheld a trial court's finding of reckless disregard involving two police officers in pursuit of a vehicle.
 

 Id.
 

 at 281
 
 (¶ 24). A driver was killed as a result of the pursuit.
 

 Id.
 

 at 276
 
 (¶ 1). The court held:
 

 Thus, the fact here that the officers did not intend that a fatal accident would result as a direct consequence of their high speed chase in violation of Jackson Police Department existing written policy is of no concern. Brister need only show that the officer actions rose to the level of recklessness. Here, it is sufficient that Brister has shown, and the trial judge so found, that the officers initiated a high speed chase with
 
 conscious indifference
 
 knowing they had not complied with Order 600-20 which was the existing governing policy of the police department at that time.
 

 Id.
 

 at 281
 
 (¶ 23) (emphasis added) (internal citations and quotations marks omitted). In this case, both officers allowed Bernius to continue to operate his boat without any restrictions, even though it was against the SOP regarding reckless operation of the boat. Both officers admitted that no distance
 of operation is permitted for a reckless operator or an operator under the influence of alcohol. As a result of the officers' conscious indifference for failure to control Bernius after they made contact with him, the trial court found their actions rose to the level of reckless disregard, and I agree.
 

 ¶ 58. "Reckless disregard is more than mere negligence, but less than an intentional act."
 
 City of Jackson v. Law
 
 ,
 
 65 So.3d 821
 
 , 826 (¶ 17) (Miss. 2011) (citations omitted). "Reckless disregard occurs when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved."
 

 Id.
 

 (internal quotation marks omitted). Bernius was allowed to operate his boat at such a reckless speed after the stop was made that neither of the officers actually witnessed the accident. This demonstrates the officers' failure to control Bernius after the stop. Neither of the officers noticed that Bernius turned his boat around in the opposite direction and proceeded to speed again after the stop. Moreover, neither of the officers took the steps to ensure Bernius was not drunk while operating the boat. The trial court found that neither Officer Thrash nor Officer Delcambre performed any investigation, obtained any information, or made any informed decision regarding Bernius's continued operation of the boat. According to the SOP manual, the officers were required to determine the reason Bernius was operating his boat in a reckless manner, issue a citation, and investigate to determine whether Bernius was intoxicated. However, the officers chose not to follow those procedures in this case.
 

 ¶ 59. The SOP 07/03 provides, in part, as follows:
 

 ....
 

 Once a vessel has been stopped, the Officer may then ascertain if there is further probable cause to suspect that the operator of the vessel is under the influence of alcohol, drugs, or a controlled substance. Evidence to warrant proceeding to the screening/intoxication interview include:
 

 1. Slurred speech;
 

 2. Poor balance (not as convincing when on water due to wave action);
 

 3. Bloodshot eyes; and
 

 4. Other behavioral anomalies that suggest the individual is not in complete control of his or her faculties.
 

 Officers Thrash and Delcambre testified they did not witness any behavioral abnormalities demonstrating that Bernius was not in complete control of his faculties or intoxicated. However, Joshua Lord, a witness at the trial, testified Officer Delcambre told another officer that Bernius was stopped, because he observed someone propping Bernius up (back to back) while he (Bernius) was operating the boat. Officer Delcambre disputes Lord's testimony regarding his statement. However, the trial court noted that Lord was an uninterested party in the matter and did not appear to have any reason to be untruthful. Officer Thrash testified he noticed Bernuis's wheelchair and colostomy bag after he approached Bernius on the boat. This Court recognizes that the presence of a wheelchair does not in and of itself suggest one is not control of his faculties. However, the presence of the wheelchair and colostomy bag coupled with being propped up while recklessly operating the boat should have given the officers enough heightened awareness to conduct an investigation of some kind in that moment. Moreover, trial counsel asked Officer Thrash if he had a heightened awareness that he had just stopped a boat driving at a recklessly high speed, and that the operator
 of the boat may have some significant physical issues. He replied in the affirmative. However, the officers chose neither to inquire nor control Bernius at that time.
 

 ¶ 60. After the crash, Bernius's BAC was .25 percent-well above the .08 percent legal limit. While Bernius's BAC level was taken after the incident, the evidence calls into question the officers' credibility regarding Bernuis's demeanor and reckless operation of the boat before the accident. Lord testified he detected a strong smell of alcohol coming from Bernius, yet Bernius never uttered a word to him. The evidence shows that a mere investigation or issuance of a citation after stopping the boat would have put the officers on notice of a potential BUI situation. This type of investigation is required under suspicion of BUI according to the BUI handbook.
 

 ¶ 61. Officer Thrash also testified he did not come to a complete "stop" because of wave action. However, at the time contact was made with Bernius, his boat had halted and had not continued to move. Bernius's boat did not move again until Officer Thrash ordered him to follow behind him. Interestingly, Officer Thrash testified he was close enough to Bernius to ask Bernius to follow him; however, Officer Thrash did not at least ask Bernius if he had been drinking (as required by the BUI-stop manual). More importantly, both officers admitted they did not have the authority to make their own guidelines regarding the stop, yet they deviated from the SOP.
 

 ¶ 62. In
 
 Turner v. City of Ruleville
 
 ,
 
 735 So.2d 226
 
 , 227 (¶ 2) (Miss. 1999), Trista Turner was injured in a collision with a drunk driver. Turner filed a complaint in Sunflower County Circuit Court against the drunk driver and the City of Ruleville, "alleg[ing] that although [the officer] knew that [a drunk driver] was intoxicated and incapable of driving his vehicle in a safe and prudent manner, [the] [o]fficer allowed [the drunk driver] to continue driving."
 

 Id.
 

 "This, Turner charged, constituted reckless disregard of the safety and well being of Turner and others traveling on the highway who were not engaged in criminal activity at the time of injury."
 

 Id.
 

 The court found that "because willful and wanton are synonymous with reckless disregard[,] and because the officer was alleged to have acted willfully and wantonly, the complaint did state a claim upon which relief could be granted."
 

 Id.
 

 at 230
 
 (¶ 22). The facts in this case are somewhat analogous to
 
 Turner
 
 . By allowing Bernius to operate his boat after the initial stop and failure to control him, the officers demonstrated a reckless disregard for the public's safety and the reckless disregard for Bernius's safety.
 

 ¶ 63. "The supreme court has[,] however[,] analyzed cases in which officers were held to have acted in reckless disregard of the safety of others in other contexts."
 
 Bradley v. McAllister
 
 ,
 
 929 So.2d 377
 
 , 380 (¶ 12) (Miss. Ct. App. 2006). "The common thread of these cases is that the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved."
 

 Id.
 

 (citation and quotation marks omitted). In this case, both officers admitted they were obligated to enforce, without exception, the boating laws of Mississippi. The officers asserted the area where they initially stopped Bernius was dangerous, and they agreed to move to a safer location for a stop. However, the trial court found that the officers did not present any evidence that the bend was dangerous other than their own testimony. No "hazardous" or "warning" signs were posted during the time of the crash around Bend 2. No pictures were offered of Bend 2 from the angle in which the officers argued their boats were coming from. The photographs
 admitted into evidence showed a pier protruding into the river. However, Officer Thrash gave testimony that he did not dock at the pier, because the three boats would have blocked traffic there. However, the trial court found no evidence to support that testimony. The trial court found that surely other boaters would be able to see three boats before coming too close to avoid contact. This conscious indifference of the officers to deviate from the SOP manual resulted in a failure-to-control situation. The trial court determined that, "It is also clear that the officers gave no consideration to ensuring that Bernius did not continue to recklessly operate his vessel during their trip down the river." The officers' conduct evinced not only some appreciation of the unreasonable risk involved (deviation from SOP), but also a deliberate disregard of that risk by allowing Bernius to continue operating the boat and not conducting a BUI investigation at the stop.
 

 ¶ 64. The majority applies the laws dealing with traffic stops to this case. They opine that the officers possessed the discretion to request Bernius to pull out of the hazardous and high-traffic area of the river. I assert this is a case of "failure to control" during and after a stop. I am of the opinion that a "stop" of a boat carries greater risk and requires more thought for the safety of the public. Therefore, when the officers deviated from the manual, at a minimum, they should have taken further precaution by asking a simple question and gaining control over Bernius's ability to operate his boat. The SOPs and laws regulating boating safety exist to ensure that accidents of this nature do not occur. Therefore, under the totality of the circumstances, I opine the officers' actions were such that a trial court could render a finding of reckless disregard for the safety of others.
 

 ¶ 65. Respectfully, I dissent.
 

 LEE, C.J., JOINS THIS OPINION; ISHEE, J., JOINS THIS OPINION IN PART.
 

 At the time of the crash, Officer Thrash had been employed by MDWFP for just over two and a half years. He received his BUI training roughly two months prior to the accident. According to testimony, this stop was the first time he had ever been involved in a BUI stop or investigation. Officer Delcambre had been employed by the MDWFP for twenty-two years at the time of the accident. He had been involved with over one hundred stops for reckless operation of a vessel.
 

 Candace Webb, legal guardian for Shane Webb, and Thomas Harper, legal guardian of Kalier Webb filed suits against MDWFP charging that the officers acted with reckless disregard for the safety of Shane and Kailer. These cases were consolidated against MDWFP. Kathleen Webb, on behalf of the wrongful-death beneficiaries of Christopher Webb, brought suit against MDWFP, Bernius, and Victor Harrington (legal owner of the boat operated by Bernius). The claims were heard pursuant to the Mississippi Torts Claims Act (MTCA). As a result, all three cases were consolidated against MDWFP. No damages were sought on Kailer's behalf. Therefore, this appeal discusses the case on behalf of Christopher Webb and Shane Webb ("Webbs").