GRIFFIS, P.J.,
for the Court:
¶ 1. In December 2004, Isaiah Robertson, a minor, stole a Ford Expedition sports-utility-vehicle belonging to Michael Fowler. After a high-speed chase between officers with the Jackson Police Department (JPD) and Robertson, Robertson collided with Kewania Lewis and Basil Thornton. Thornton suffered numerous injuries and filed suit in Hinds County Circuit Court against the City of Jackson (City) for the JPD officers’ actions. After a bench trial, the circuit judge issued a lengthy order that awarded $800,000 to Thornton and apportioned 80% liability to the City and 20% liability to Robertson.
¶ 2. On appeal, the City asserts that: (1) the circuit court erred in apportioning fault between the City, Robertson, and Lewis; and (2) the damages awarded are against the overwhelming weight of the evidence. We find reversible error in the trial court’s apportionment of fault. Therefore, we reverse and remand for further proceedings consistent with this opinion.
STATEMENT OF FACTS
¶ 3. On December 15, 2004, Fowler left his vehicle running while he entered J & J Quick Stop on Bounds Street in Jackson, Mississippi. While Fowler was in the store, Robertson, who was approximately fifteen years old at the time of the incident, stole the vehicle. Fowler contacted JPD; he was met by Officer John Strong at the scene of the crime. Fowler identified Robertson as the person who had stolen his vehicle. Shortly thereafter, Officer Strong was informed that the vehicle had been located, and Officer Strong instructed Fowler to get inside his police cruiser.
¶ 4. Meanwhile, Officer Kenneth Taitón, who had been advised of the crime, discovered Robertson in the stolen vehicle parked at a nearby apartment complex. Upon observing Officer Taitón, Robertson left the parking lot of the apartment complex, and Officer Taitón began following him. A few minutes later, after Robertson ran a traffic light and Officer Taitón confirmed the license plate of the stolen vehicle, Officer Taitón activated his blue lights and his siren, signaling for Robertson to pull over. A high-speed chase ensued with Officer Taitón leading the chase; Officer Strong, with Fowler in his vehicle, followed Officer Taitón and Robertson. After approximately five minutes, Robertson crashed the vehicle into Lewis’s vehicle and Thornton’s vehicle.
*1189 ¶ 5. At the time of the accident, Lewis had been stopped at a red traffic light and was searching for something in her car when she noticed that the traffic light had turned green. Thornton was stopped at the traffic light as well, having just dropped his children off at a nearby school. Thornton’s vehicle was located diagonally to Lewis’s vehicle and directly opposite from the oncoming stolen vehicle. Lewis proceeded into the intersection without looking to her right or left for illegally proceeding traffic, and her vehicle was struck by Robertson. After crashing into Lewis’s vehicle, Robertson ricocheted off of Lewis’s vehicle and hit Thornton’s vehicle. Robertson then fled the scene on foot, but he was quickly captured.
¶ 6. On June 20, 2006, Thornton filed a complaint against the City. At the bench trial in November 2009, witnesses testified that: Robertson had run numerous red traffic lights during the chase; he had traveled anywhere between fifty-five and eighty-five miles per hour in forty-mile-per-hour speed zones; he had driven erratically through heavily populated streets and a private yard; and he was traveling through areas in close proximity to schools, residential neighborhoods, a church, and a daycare.
¶ 7. The evidence of Thornton’s injures presented at trial showed that because of the wreck, he had a broken vertebrae in his neck, broken foot, completely severed jaw muscle, glass imbedded in his head and face, and severe and disfiguring lacerations to his face and head. At the time of the crash, Thornton was an officer with the Richland Police Department and worked a second job at a local Greyhound Bus Station. Evidence of Thornton’s lost wages and medical expenses were also shown, as well as evidence of other non-economic damages suffered by Thornton due to the crash.
¶8. On May 6, 2010, the circuit judge entered a fifteen-page memorandum of findings of fact and conclusions of law in conjunction with the judgment. The circuit court found that the City had incurred liability through JPD’s high-speed pursuit of Robertson, which the circuit court determined was “extreme, reckless, and an unreasonable danger to the public.” Furthermore, the circuit court concluded that the JPD officers had disregarded JPD policy regarding pursuit of suspects by not terminating the chase with Robertson after witnessing Robertson’s reckless driving and obvious refusal to yield to the police and by failing to advise the JPD supervisor on duty of Robertson’s excessive speed and dangerous conduct.
¶ 9. The circuit court considered the following in determining Thornton’s damages: medical and hospital bills, lost wages and earning capacity, physical injuries and disfigurement, pain and suffering, and loss of enjoyment of life. In its final judgment, the circuit judge awarded Thornton $375,000, which was statutorily reduced to $300,000. Thereafter, the circuit court determined the City was the primary proximate cause of the accident and Thornton’s damages, and the court apportioned 80% liability to the City and 20% liability to Robertson.
DISCUSSION
¶ 10. It is well settled that the findings of a circuit judge, sitting without a jury, “are safe on appeal where they are supported by substantial, credible, and reasonable evidence.” Mayor and Bd. of Aldermen, City of Ocean Springs v. Homebuilders Ass’n of Miss., Inc., 932 So.2d 44, 48 (¶ 6) (Miss.2006) (citation and quotation omitted). “This Court will not disturb those findings unless they are manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” *1190 City of Jackson v. Perry, 764 So.2d 373, 376 (¶ 9) (Miss.2000) (citation omitted).
I. Reckless Disregard
¶ 11. Suits against a municipality are brought under the Mississippi Tort Claims Act. Miss.Code Ann. § 11-46-1 to -23 (Rev.2002; Supp.2011). In order for a municipality to waive governmental immunity from suit, the state actor in question or its employee must be found to have “acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.” Miss.Code Ann. § ll-46-9(l)(c) (Supp. 2011). The City cites to Ogburn v. City of Wiggins, 919 So.2d 85 (Miss.Ct.App.2005) to support its argument that the JPD officers did not act in reckless disregard and that their actions were not the proximate cause of Thornton’s injuries.
¶ 12. Ogbum involved the wrongful death of Lomax Ogburn, a motorist who was struck by a vehicle driven by John Wortham and pursued by City of Wiggins Police Officer Jamie Smith. Id. at 87 (¶ 1). Officer Smith began following Wortham after witnessing him speeding and driving erratically in Wiggins, Mississippi. Id. at 87 (¶ 3). After pursuing Wortham for approximately one or two minutes, Officer Smith lost sight of the vehicle. Id. at 87 (¶ 4). Shortly thereafter, Officer Smith spotted the aftermath of a crash involving Wortham and Ogburn. Id. at 87-88 (¶ 4). Ogburn was killed in the crash, and her family filed suit against the City of Wiggins for her wrongful death, claiming Officer Smith had acted with reckless disregard in his pursuit of Wortham. Id. at 88 (¶ 6). On appeal, we reiterated the following factors that must be considered in determining whether a police chase constitutes reckless disregard:
(1) length of chase; (2) type of neighborhood; (3) characteristics of the streets; (4) the presence of vehicular or pedestrian traffic; (5) weather conditions and visibility; and (6) the seriousness of the offense for which the police are pursuing the vehicle.
Id. at 88-89 (¶ 10) (citing City of Jackson v. Brister, 838 So.2d 274, 280 (¶ 22) (Miss.2003)). We ultimately determined Officer Smith had not acted in reckless disregard. Id. at 91 (¶ 19). In particular, we referenced an expert witness’s testimony that “given the short distance, rural area, seriousness of the offenses, and other factors, the entire pursuit was appropriate.” Id. at 90 (¶ 16).
¶ 13. By contrast, in Brister, which is referenced in Ogbum, the Mississippi Supreme Court reviewed the actions of JPD officers after a high-speed chase resulted in the death of Jamie Boyll. Brister, 838 So.2d at 276 (¶ 1). On the day of the incident, Elizabeth Slater was reported to JPD for having allegedly attempted to pass a forged check at a local bank. Id. JPD officers spotted Slater getting into her vehicle at the bank, and they began pursuing her when she attempted to evade them. Id. Though the pursuit only lasted approximately one minute, it took place in a heavily populated, residential area of northeast Jackson, Mississippi, that included at least one elementary school. Id. at 280 (¶ 21). Slater was traveling in excess of seventy to eighty miles per hour in a thirty-five-mile-per-hour speed zone. Id. The JPD officers in pursuit were traveling approximately fifty-five miles per hour. Id. Slater ultimately ran a red traffic light and crashed into Boyll, killing her. Id. at 276 (¶ 1). Boyll’s family filed suit against the City, claiming JPD had acted with reckless disregard in its pursuit of Slater. Id. at 276 (¶ 3).
¶ 14. The City was found to have acted with reckless disregard, and it was apportioned liability in the amount of 50%. Id. at 276 (¶ 4). On appeal, the supreme court affirmed the judgment. Id. at 281 (¶ 24).
*1191 We have summarized the facts the supreme court noted in its analysis to conclude that the City had acted with reckless disregard:
(1) The JPD officers could have blocked in Slater at the bank; instead, they parked beside her, allowing her to escape in her vehicle.
(2) The JPD officers could have easily written down Slater’s license plate number to find her instead of engaging in the high-speed chase.
(3) The JPD officers violated JPD policy on pursuits when they initiated the chase as Slater and her escape were less dangerous to the community than the risk posed by the pursuit.
(4) The JPD officers violated policy on pursuits when they chased Slater through heavily populated, residential areas traveling at least twenty miles per hour above the posted speed limit.
Id. at 280 (¶ 21).
¶ 15. Notably, the Mississippi Supreme Court recently addressed the issue of high-speed pursuits in City of Jackson v. Gray, 72 So.3d 491 (Miss.2011). In Gray, Alice Wilson was discovered by City of Raymond Police Officer Randy Razor weaving onto the shoulder of the road and causing other vehicles to drive off the road in Raymond, Mississippi. Id. at 492-93 (¶ 2). Officer Razor attempted to pull over Wilson, to no avail. Id. After witnessing Wilson appear to talk to herself in her vehicle, Officer Razor advised the dispatcher for the Raymond Police Department that Wilson was possibly mentally impaired. Id.
¶ 16. Thereafter, JPD Officer Stephen Coleman heard Officer Razor alert Jackson authorities to be on the lookout for his pursuit of Wilson, since they were approaching the Jackson city limits. Id. at 492-93 (¶ 3). JPD Sergeant Amy Barlow instructed JPD officers to monitor and assist the pursuit. Id. Accordingly, Officer Coleman responded by blocking traffic in the nearest intersection on Wilson’s path and following behind Officer Razor in his pursuit. Id. Sergeant Barlow had instructed JPD officers to monitor and assist the pursuit. Officer Coleman was joined by Officer Terrance Spann in the pursuit. Id. All officers had their emergency lights and sirens activated during the chase. Id.
¶ 17. Officer Razor continued his pursuit of Wilson into downtown Jackson, with Officers Coleman and Spann following him and a Metro One helicopter observing the chase from the air. Id. at 493-94 (¶ 4). The pursuit continued through several intersections and down a one-way street going the wrong way. Id. Officers Coleman and Spann did not follow Officer Razor onto the one-way street, and Officer Coleman immediately announced the termination of the pursuit after Wilson had turned onto the one-way street. Id. Officers Coleman and Spann deactivated their emergency lights and sirens and later lost sight of Officer Razor and Wilson because of an incline in the street. Id. at 493-94 (¶¶ 4-6).
¶ 18. Shortly thereafter, Wilson ran a red traffic light and crashed into a vehicle rightfully entering the intersection. Id. at 493-94 (¶ 7). The driver of the vehicle that Wilson hit was killed, and the family of the driver filed suit against the City, claiming that JPD was reckless in its pursuit of Wilson. Id. at 493-95 (¶¶ 7-8). The circuit court concluded that JPD had acted with reckless disregard, and the court assessed JPD 20% liability. Id. at 494-95 (¶ 9).
¶ 19. On appeal, the supreme court reviewed the circuit court’s findings and determined that the court had failed to address all of the applicable factors for analyzing high-speed chases for reckless disregard. Id. at 496-97 (¶ 17). Included in the supreme court’s analysis were the six factors discussed previously from *1192 the Ogbum case, as well as the following four factors: “[1] whether the officer proceeded with sirens and blue lights; [2] whether the officer had available alternatives which would lead to the apprehension of the suspect besides pursuit; [3] existence of a police policy which prohibits pursuit under the circumstances; and [4] rate of speed of the officer in comparison to the posted speed limit.” Id. (citing City of Ellisville v. Richardson, 913 So.2d 973, 978 (¶ 17) (Miss.2005)).
¶ 20. In its analysis, the supreme court reviewed each of the ten factors separately and concluded that JPD had not acted with reckless disregard and that the City should not have been held liable. Id. at 500-01 (¶ 34). The supreme court also noted that the circuit court discussed some but not all of the applicable ten factors and that the circuit court had failed to even discuss some factors showing the City did not act recklessly. Id. at 496-97 (¶ 17). We summarize the supreme court’s analysis of the factors referenced in its finding:
(1) Although in general the areas in which Wilson had been pursued by JPD officers is a mix of commercial and residential neighborhoods, most of the downtown Jackson area is commercial, with only a few neighborhoods.
(2) The pursuit was on a Saturday afternoon around 5:45 p.m., with little to no traffic in the area.
(3) Contrary to the circuit court’s determination, the JPD officers did not violate police policy on pursuits, and they timely advised their supervisor of the pursuit’s events as they were occurring.
(4) The JPD officers were only traveling at approximately forty-five miles per hour in a thirty-five-mile-per-hour speed zone.
Id. at 497-500 (¶¶ 20-31). Additionally, the supreme court took into account “that the JPD officers did not initiate the pursuit and that they consistently have claimed that their role in the pursuit was to assist with traffic, protect citizens, and protect Officer Razor if needed.” Id. at 500 (¶ 32).
¶ 21. As stated by the supreme court, “[i]t is appropriate for trial courts to consider all ten factors, and to look at the totality of the circumstances when analyzing whether someone acted in reckless disregard.” Id. at 497 (¶ 17) (quoting Richardson, 913 So.2d at 978 (¶ 17)). Having reviewed the record in the case at hand, we must conclude that the JPD officers acted with reckless disregard. We now analyze each of the ten factors individually.
A.Length of the Chase
¶ 22. The record reflects the chase at hand lasted approximately five minutes. The circuit court also noted that the pursuit spanned approximately four and one-half miles
B.Type of Neighborhood
¶ 23. The circuit court discussed in detail the neighborhoods through which the pursuit took place. While overall there was a mix of commercial and residential areas, Robertson and the pursuing officers sped by “residences, a church daycare and a Head Start program!,] ... a residential neighborhood [that] contained narrow streets which were in generally poor condition!,] • • • the main entrance to Tougaloo College,” as well as numerous medical-care facilities. Furthermore, “the suspect drove the stolen vehicle through the back yard of a private residence, around the residence, and out through the front yard of the private residence,” all while being followed by JPD officers.
C.Characteristics of the Streets
¶ 24. As noted above, the streets in some of the residential areas through which the pursuit occurred were very narrow and in poor condition. Additionally, *1193 the circuit court reiterated the JPD officers’ view of Robertson was blocked or hindered in numerous locations due to “rises in the streets and also railroad embankments.” The record supports the circuit court’s assertion that “[ujndisputed testimony revealed that the [JPD officers’ view] ... of the intersection, where the accident occurred ... was obstructed by a rise in the road.”
D.Presence of Vehicular or Pedestrian Traffic
¶ 25. The record shows the chase occurred at approximately 8:30 a.m. on a weekday during the school year, such that children were present in the school and daycare surrounding the area. The circuit court stated: “There was moderately heavy morning traffic in the area and all lanes of traffic contained vehicles.” Furthermore, almost all of the residential areas involved in the chase contained sidewalks.
E. Weather Conditions and Visibility
¶ 26. The circuit court did not address this issue in its order. However, trial testimony from Fowler reveals the weather on the day of the incident, December 15, 2004, was “real cold and cloudy,” and that visibility was good. Fowler further testified it was not raining.
F. The Seriousness of the Offense for Which the Police Are Pursuing the Suspect
¶27. JPD officers began their pursuit of Robertson after Fowler had left his SUV running and unlocked outside of a local store and Robertson stole the vehicle. There is no indication in the record that Robertson displayed or possessed any type of weapon at any point during the incident. As noted by the circuit court, Officer Strong “conceded that had the pursuit been abandoned, the juvenile suspect did not pose any threat or danger to the public.”
G.Whether the Officer Proceeded with Emergency Lights and Sirens
1128. The record reflects that the JPD officers had their emergency lights activated from the inception of the chase. The circuit court noted the JPD officers maintained their emergency lights and sirens before, during, and after the crash.
H.Whether the Officer Had Available Alternatives Which Would Lead to the Apprehension of the Suspect Besides Pursuit
¶ 29. In its opinion, the circuit court questioned whether the JPD officers knew the suspect’s identity and if apprehension would have been feasible at a later date. The circuit court opined that while identification of Robertson was not known at the time of the incident, identification of Robertson “would have been reasonably possible had the police elected not to pursue the stolen vehicle.” Specifically, the circuit court stated: “In this case, the juvenile suspect had been seen at a very close distance by the auto[-]theft victim. He was accurately described to the police officers by the theft victim. The juvenile suspect was also viewed in the vehicle stopped in an apartment parking lot by Officer Taitón.”
I.The Existence of Police Policy Prohibiting Pursuit Under the Circumstances
¶ 30. At trial, the JPD supervisor on duty the morning of the incident, Sergeant Maury Mullins, testified that JPD General Order 600-20 (the order) governs police pursuits, including the instant pursuit. The order advises JPD officers to “notify dispatch as soon as [a pursuit] begins to take place[,] • • • notify dispatch of the reason that the vehicle is being pursued, the speed, the direction of the travel and so forth.” The circuit court also noted the order mandates that if the pursuit becomes too dangerous, officers are sup *1194 posed to report to the dispatcher so the supervisor on duty has the opportunity to terminate the pursuit. Accordingly, JPD officers have a duty to report any unsafe driving conduct of the. suspect. This was not done in the present case. Sergeant Mullins testified that had he been notified of Robertson’s reckless driving, including driving through a private yard and traveling at high speeds, he would have terminated the pursuit immediately.
¶ 31. In its analysis, the circuit court stated the following with regard to the JPD officers’ violation of the order:
[The order] specifies that to terminate a pursuit, officers are expected to turn off their emergency lights and sirens, and either stop their vehicles or turn around and drive away from the fleeing vehicle. None of these steps were ever taken by the pursuing officers. In fact, the JPD officers’ testimony revealed that the police had notice, well in advance of the crash, that the suspect vehicle was being operated in a manner evincing recklessness and indifference to human safety. The pursuing officers had already seen the suspect disobey traffic control devices and drive through a private yard in order to escape capture ... [Sergeant Mullins] ... testified that the pursuing JPD officers had a duty to call the supervisor if the situation was too dangerous. Had he known that the speed of the chase reached 60 mph, (which he was never advised), he would have called the chase off. Also, [Sergeant] Mullins stated that if he had been told (which he has no recollection of being told) that an officer had a civilian in his car during the chase, he would have told the officer to discontinue the chase.
J. The Rate of Speed of the Officer in Comparison to the Posted Speed Limit
¶ 82. The circuit court discussed in detail the speeds of the JPD officers involved in the pursuit. Witnesses to the chase testified that Robertson was traveling at least fifty-five miles per hour in a forty-mile-per-hour speed zone, where he passed a daycare, a church, and numerous residences. Lewis testified that Robertson was traveling anywhere from fifty to eighty miles per hour at the time of impact. Officer Taitón testified that Robertson never exceeded three car lengths in front of the JPD officers at any time during the chase. As such, the JPD officers were traveling at speeds anywhere from fifty-five miles per hour up to eighty miles per hour in forty-mile-per-hour speed zones.
¶ 33. Considering the totality of the circumstances in conjunction with the aforementioned analysis of the applicable ten factors, we cannot conclude the circuit court erred in its determination that the JPD officers had acted with reckless disregard. The pursuit spanned almost five miles and wound through heavily populated residential areas. At 8:30 a.m. on a school day, the officers were speeding through heavily trafficked neighborhoods, with cars, pedestrians, and school children located on and around the streets. The JPD officers’ actions were clearly in violation of the order, and apprehension of Robertson was reasonably possible without engaging in the pursuit. As such, we find the City’s arguments are without merit.
II. Proximate Cause and Apportionment
¶ 34. Proximate cause is comprised of cause-in-fact and foreseeability. Ogbum, 919 So.2d at 91 (¶ 21) (citation omitted). “ ‘Cause in fact’ means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred.” Id. (citation omitted). “Foreseeability means that a person of ordinary intelligence *1195 should have anticipated the dangers that his negligent act created for others.” Id. at 92 (¶ 21).
¶ 35. Here, Robertson clearly ran a red traffic light after being followed by Officer Taitón. The high-speed chase that occurred thereafter would not have continued but for the JPD officers’ pursuit of Robertson. We cannot say that Robertson would have been traveling at such high speeds and driving in such an erratic manner had JPD not been chasing him. The resulting crash, and therefore Thornton’s injuries, would not have taken place if Robertson were not attempting to escape from the JPD officers.
¶ 36. Additionally, JPD officers are trained to understand the dangers associated with police pursuits and fleeing criminals. The Mississippi Supreme Court has stated that “one who negligently drives an automobile reasonably should foresee that his or her negligence could be expected to cause certain kinds or categories of damages .... [including] traumatic injury, medical bills, lost wages, and pain and suffering.” Glover ex rel. Glover v. Jackson State Univ., 968 So.2d 1267, 1278 (¶ 38) (Miss.2007). The officers involved in the chase at hand should have anticipated the dangers associated with conducting a high-speed pursuit of a reckless and dangerous criminal in heavily populated areas of town. The injuries Thornton suffered are within the category of those the JPD officers should have reasonably anticipated to have occurred due to their negligence. Accordingly, we conclude the City was the a proximate cause of Thornton’s injuries resulting from the crash.
¶ 37. Having concluded that the circuit court was proper in finding the City to have proximately caused Thornton’s damages, we must address the circuit court’s apportionment of fault between the negligent parties.
¶ 38. In the June 23, 2010 order, the circuit court addressed the issues of apportionment between the City, Lewis, and Robertson. The circuit court reiterated its finding that the City had acted with reckless disregard in its pursuit of Robertson and that the City’s actions had proximately caused the accident and Thornton’s injuries. The City asserts the circuit court failed to allocate fault to Lewis as prescribed by law.
¶ 39. The circuit court devoted an entire section of its analysis to Lewis and ultimately determined that she was not at fault. While the circuit court did not specifically state that Lewis had 0% liability, there is no ambiguity in the circuit court’s order that Lewis was not to be apportioned any percentage of fault. The circuit court properly stated its finding that Lewis should not be apportioned any liability. We cannot find the court in error in the finding that Lewis “acted reasonably under the circumstances.”
¶ 40. The circuit court apportioned 20% of the damages to Robertson. In another section of its order, the circuit court analyzed Robertson’s actions and detailed his involvement in the crash. The circuit court then stated: “Robertson’s reckless actions and failure to yield to the pursuing officers, in addition to his failure to stop at the subject red traffic light, contributed to the cause of the subject accident.” Nonetheless, the circuit court went on to say “the City[’s] negligent pursuit in reckless disgregará [sic] was the primary proximate cause of the subject accident.... Robertson’s negligence was a proximate contributing cause.”
¶ 41. Having read the record and considered the findings of the trial judge, we find that there was not substantial evidence to support the trial court’s final assessment of fault at 80% to the City and *1196 20% to Robertson, the thief and driver of the stolen vehicle.
¶ 42. First, the trial court initially[1] found the City to be “the proximate cause of the accident.” The evidence presented at trial did not support this finding. Robertson was “the” proximate cause of the accident and Thornton’s damages. He stole the car, he ran from the police, he ran the red light, and he crashed into Lewis and Thornton. There can be no doubt that Thornton was the primary tort-feasor. The trial court was correct to find eventually[2] that “Robertson’s negligence was a proximate contributing cause,” which supported the trial court’s order granting in part and denying in part the City’s motion to amend judgment. The trial court’s order assessed “twenty percent (20%) of liability to Robertson” based on the finding:
Isaiah Roberston
On the day of the subject accident, Isaiah Robertson, a juvenile who was driving a stolen car, led Jackson Police Department officers on a dangerous high-speed chase, which lasted approximately 4.5 miles. Throughout the entire chase, Robertson failed to yield to the pursuing police officers. During the chase, Robertson proceeded through red traffic signals, drove through residential property!!,] and drove recklessly and in excess of the speed limit. Robertson continued to flee the pursuing officers until his vehicle proceeded through a red traffic signal, at the intersection of Beasley Road and State Street, causing the subject collision. The Court, upon further consideration, hereby finds that Isaiah Robertson’s reckless actions and failure to yield to the pursuing officers, in addition to his failure to stop at the subject red traffic light, contributed to the cause of the subject accident. Accordingly, the Court finds and hereby incorporates its May 5, 2010 findings that the City of Jackson’s negligent pursuit in reckless disregard was the primary proximate cause of the subject accident. However, the Court finds that Isaiah Robertson’s negligence was a proximate contributing cause, and the City of Jackson’s Motion to Amend Judgment is well-taken, regarding Robertson. The Court amends its May 5, 2010 judgment and assesses twenty percent (20%) of liability to Robertson.
¶ 43. We agree that the City was a substantial contributing cause to the accident, and as a result, it should be assessed a percentage of damages through the allocation of fault. However, we cannot find that the City was “the proximate cause” of the accident with Robertson as “a contributing cause.” The trial court’s order clearly states that Robertson’s actions caused the accident. But for Robertson’s driving, the accident would not have occurred.
¶ 44. The evidence in this case does not support an apportionment of a greater percentage of fault to the City than to the criminal who actually made the decision to drive the vehicle through the red light and *1197 collide with other vehicles, which ultimately caused the injuries and damages to Thornton.
¶ 45. In a very similar case, the Mississippi Supreme Court in City of Jackson v. Law, 65 So.3d 821, 835 (¶¶ 57-58) (Miss.2011) held:
Stemming from the City’s substantial-contributing-cause argument, the City contends that the trial court erred by finding that Dearman [the criminal fleeing police officers] was only sixty percent at fault for the accident. In support of this contention, the City states that “[b]eeause of the actions of Dear-man and her disregard of law enforcement and her voluntary guilty plea to aggravated assault, the City of Jackson respectfully submits that she was the significant proximate cause of the collision.”
This Court finds this issue to be without merit. The trial judge’s finding actually reflects that Dearman was the significant cause of the accident, because he found her to be sixty percent at fault. Moreover, an allocation of forty percent negligence to May is supported by substantial evidence in the record. Again, [the police officer] recklessly disregarded the public’s safety by the manner in which he conducted his pursuit of Dear-man.
¶ 46. The supreme court recognized that there was substantial evidence to assess 60% of fault to the criminal whose actions were the direct proximate cause of the accident. The record here does not support an apportionment of 80% fault to the City and 20% to the criminal fleeing the police. We reverse the circuit court’s judgment on this issue, and this case is remand for a new trial on the apportionment of damages.
III. Damages
¶ 47. Finally, the City asserts the circuit court erred in its finding of damages, and the amount of damages awarded is against the overwhelming weight of the evidence. The Mississippi Supreme Court has stated that a “plaintiff will be allowed to recover for all injuries and damages reasonably expected to result from automobile accidents.” Glover, 968 So.2d at 1279 (¶ 38). At trial, Thornton took the stand and spoke about his life before the accident, the accident, his injuries, and his life after the accident. It is clear from Thornton’s testimony that his life changed dramatically after the crash. Thornton’s wife also testified about Thornton’s physical and emotional difficulties following the crash. It is undeniable that Thornton experienced, and continues to experience, significant and debilitating pain and suffering both physically and emotionally.
¶ 48. Thornton’s medical bills were also submitted to the circuit court for review, as well as his lost wages and evidence of his inability to continue working in his prior jobs after the crash. Thornton’s economic losses alone totaled over $76,000. The supreme court has stated some of the factors to be considered in an analysis of damages include “the degree of physical injury, mental and physical pain[;] present and future, temporary and permanent disability^] medical expenses[;] loss of wages and wage-earning capacity[;] sex, age, and plaintiffs state of health; the loss of use of limbs; [and] disfigurement or mutilation of the body.” Woods v. Nichols, 416 So.2d 659, 671 (Miss.1982) (internal citations omitted).
¶ 49. Having reviewed the record thoroughly, we cannot conclude the circuit court’s calculation of damages was erroneous. We have held:
A party will not be able to escape liability because of a lack of a perfect measure *1198 for damages. Rather, sufficient proof is that which is a reasonable basis for computation of damages and the best evidence obtainable under the circumstances of the case that will enable the trier of fact to arrive at a fair approximate estimate of the loss.
Progressive Cas. Ins. Co. v. All Care, Inc., 914 So.2d 214, 221 (¶ 18) (Miss.Ct.App. 2005) (internal citations omitted). We find the circuit court properly approximated Thornton’s losses. As such, this issue is without merit.
¶ 50. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
IRVING, P.J., BARNES, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. ISHEE, J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND CARLTON, J. MYERS, J., NOT PARTICIPATING.

. In the Final Judgment, the trial court found the City to be 100% at fault. The Final Judgment did not address the faulphegligence of Robertson.

. The City timely filed a motion to amend the judgment. The motion asked the trial court to amend the judgment "to apportion liability to Co-Defendant Isaiah Robertson and Kewa-nia Lewis." Specifically, the motion cited Mississippi Code Annotated section 85-5-7 (Rev.2011) and argued that "[i]n actions involving joint tort-feasors, the trier of fact shall determine the percentage of fault for each party alleged to be at fault.” Thornton's complaint named the City, several officers, and Robertson as defendants. The complaint alleged that Robertson acted with "negligence, negligence per se and gross negligence.” The evidence presented at trial clearly indicated Robertson was negligent, and his negligence proximately caused damage to Thornton.